# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 56

APRIL TERM, A.D. 2013

*May 9, 2013*

THE STATE OF WYOMING,
DEPARTMENT OF FAMILY
SERVICES, CHILD SUPPORT
ENFORCEMENT,

Appellant
(Intervenor),

v.                                                          S-12-0192

CONNIE M. POWELL,

Appellee
(Defendant).

*Appeal from the District Court of Hot Springs County*
*The Honorable Robert E. Skar, Judge*

*Representing Appellant:*
> Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; and Jared Crecelius, Senior Assistant Attorney General.

*Representing Appellee:*
> No appearance filed.

*Before KITE, C.J., HILL, VOIGT, BURKE, and DAVIS JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]    In 2009, the Wyoming Department of Family Services (Department) filed an action to enforce a 2003 order requiring Connie Powell to pay child support and certain related expenses. Instead of enforcing the 2003 order, the district court set aside the 2003 order, ordered that the child support obligation be recalculated, and directed that the revised child support obligation be applied retroactive to 1999, the date the children's father obtained custody of the children. The Department appeals, contending that the district court abused its discretion in setting aside the 2003 order. We hold that the district court was without jurisdiction to modify the 2003 child support order and remand for entry of an order consistent with our direction herein.

## ISSUE

[¶2]    The Department presents the following issue on appeal:

> In 2012, the district court ordered a retroactive recalculation of child support against Connie Powell, the non-custodial mother. The district court also set aside a 2003 judgment entered against Ms. Powell for child support arrears and medical and travel expenses even though neither the mother nor the father filed a motion or petition requesting modification of child support or relief from the judgment. Did the district court abuse its discretion by retroactively modifying the child support order and setting aside the judgment without a proper petition or motion from a party requesting such relief?

## FACTS

[¶3]    Charles Ferree (Father) and Connie Powell (Mother) divorced in 1990. Mother and Father had two children as issue of the marriage, CF and WF, and originally entered into a Property Settlement and Custody Agreement that gave Mother primary custody of the children and established Father's child support obligation. In 1991, Mother and Father stipulated to a modification of their agreement, which provided that each parent would have custody of one child and neither would pay child support. The agreement was approved by a May 16, 1991 Order Modifying Decree of Divorce.

[¶4]    In 1998, Mother and Father stipulated to transfer the case from the First Judicial District to the Fifth Judicial District, Hot Springs County, since Mother lived out of state and Father lived in Hot Springs County. In 1999, Mother and Father again stipulated to a modification of their divorce decree, this time agreeing that Father would have primary custody of both children, Mother would be responsible for half the children's medical

1

expenses not covered by insurance and half of the travel expenses for the children's visits with Mother, and Mother would have no responsibility to pay child support. In August 1999, the district court entered an order approving the stipulated modification except the terms governing child support. Regarding child support, the court ruled that the parties' stipulation was contrary to law, and it ordered:

> Plaintiff and Defendant shall submit financial affidavits to the Court within twenty (20) days of this Order, along with any further stipulations as to child support. If child support is not resolved within thirty (30) days, the parties shall request a hearing before the Court.

[¶5]    Neither Mother nor Father filed financial affidavits or requested a hearing on the child support as ordered, and the case remained inactive until May 2003, when Father filed a Motion for Order to Appear and Show Cause. Through that motion, Father alleged that Mother had made no payments toward her half of the children's expenses or any child support payments since entry of the 1999 order. Father requested that the district court order Mother to pay her half of the children's expenses and that:

> The Court order the Defendant to supply copies of tax returns from 1999 to present and a financial affidavit to determine whether or not the Defendant is capable of working to support the minor children and determine child support for both children either at the statutory minimum or pursuant to Wyoming Statutes, and make said payments retroactive from the Court's Order of August 23, 1999.

[¶6]    Following a hearing on June 30, 2003, the district court entered an Order on Medical and Child Support, dated August 4, 2003. The court made findings concerning medical and travel-related expenses and granted Father the sum of $21,027.85 "for arrearages for child support, medical care, and transportation costs of the minor children as of June 30, 2003." Concerning child support, the order stated, in part:

> 7. An Order was issued by this Court changing primary custody of the minor child, [WF], which order was signed and filed on August 23, 1999, which ordered the parties to submit appropriate wage affidavits for determination of proper child support.
>
> 8. Proper affidavits were not submitted.
>
> 9. Pursuant to the Order to Appear and Show Cause signed by this Court on May 23, 2003, the Defendant and

2

Plaintiff supplied income affidavits and copies of pay stubs. Based upon the pay stub submitted by the Defendant, she currently has an average net income of $1,693.29 per month.

10. Based upon pay stubs submitted by the Plaintiff, he currently has an average net monthly income of $3,600.93.

11. Based upon the child support guidelines for two children, the current total amount of support due for the support of the child[ren] would be $1,218.78.

12. Since Plaintiff, as father, has primary custody of the child[ren], the percentage of support owed by the mother is $389.81 per month.

13. Said support should be set retroactive to the date of custody granted by this Court on August 23, 1999, resulting in a total arrearage of $17,931.26 in child support arrearage through and including June 30, 2003. The next regularly scheduled payment due by the Defendant to the Plaintiff for child support is July 23, 2003, and child support payments are due on the 23rd of each month thereafter.

[¶7] Mother did not appeal this order, and the case again remained inactive until December 2003. On December 1, 2003, Mother filed a Petition for Modification of Order requesting that she be awarded primary custody of the parties' daughter, WF. Father responded to Mother's motion on February 10, 2004, by filing a Motion to Modify Visitation, requesting that Mother be permitted only supervised visitation with the children, and a Motion for Order to Appear and Show Cause, alleging Mother had failed to comply with the August 2003 child support order.

[¶8] The district court held a hearing on the motions on March 4, 2004. This hearing was not reported, and the court did not enter a written order following the hearing. On March 9, 2004, Father's attorney submitted a letter to the court, apparently seeking clarification and guidance regarding what occurred during the March 4th hearing. The letter from Father's attorney stated that during the hearing the court denied Mother's custody motion and Father withdrew his visitation motion, and stated as follows concerning child support:

The Court made a ruling regarding the Show Cause that despite the Defendant having testified that she has never paid any support for the minor children, that the Plaintiff had unclean hands due to his failure to file a financial affidavit.

The Court stated there was no financial affidavit in the Court file. Upon making an investigation after Court, it was found both Plaintiff and Defendant had financial affidavits on file with the Court, but they had been placed in a separate, sealed envelope, marked "Confidential Financial Information".

. . . .

Please notify the parties if the Order simply needs to be amended or whether or not the old Order needs to be put into effect and we need to request a rehearing on the matter. … If no direction is given by the Court, the Defendant will file for a rehearing in 10 days.

[¶9]     The record contains no indication that either party requested a new hearing following this correspondence, and the district court did not enter an order subsequent to the letter. The case again remained inactive until 2009. On October 14, 2009, the Department filed an Affidavit and Motion for Order to Show Cause and for Judgment of Contempt against Mother based on Mother's alleged failure to pay child support and related expenses. On March 31, 2010, the court issued an Order Denying Contempt and Requiring Information to be Submitted to the Court. In so ordering, the court found that Mother's failure to pay child support was not willful but was instead a result of confusion over the court's order following the March 2004 hearing. The court thus ordered that the parties or their attorneys submit "all relevant notes or other documents from the March 4, 2004 hearing to provide the court a basis for a written order from said hearing."[1]

[¶10]  On September 2, 2010, the Department filed a Motion for Order from March 4, 2004 Hearing. Through its motion, the Department informed the district court that no information was submitted in response to the court's order requiring the submission of information, and it requested that the court set a hearing to determine the content of the March 4, 2004 order.

[¶11]  On March 14, 2012, Mother filed a Request for Entry of Order on Hearing Held March 4, 2004. Mother attached to her request an affidavit from the attorney who represented her in the March 4, 2004 hearing. That attorney attested as follows:

To the best of my knowledge and belief, at that hearing, because of plaintiff having "unclean hands" for failure to file financial records, the Court order dated August 4, 2003 was withdrawn and Plaintiff, by and through his attorney …, was instructed to file a new motion if so desired.

---

[1] Between the March 4, 2004 hearing and the Department's 2009 contempt motion, the district court judge who presided over the March 2004 hearing retired and a new district court judge was appointed.

4

[¶12] On May 21, 2012, the district court held a hearing on the Department's motion. During that hearing, the court indicated that from the record, it was unable to resolve what occurred during the March 2004 hearing and it was thus willing to take testimony on the question. The only testimony offered was from Mother, who testified that she could not recall how the issue of child support was raised during the March 2004 hearing. She further testified:

> He did rule at the time that he was modifying or dismissing the previous 2003 court order because it was stated that Mr. Ferree had unclean hands by not submitting his financial affidavit, and that if he wished to pursue further child support, that they would need to file a new motion with the Court, and at the time I was told that the order was dismissed.

[¶13] On June 29, 2012, the district court issued an Order Setting Aside August 4, 2003 Judgment and Child Support Obligation. The court found and ordered as follows:

> 1. The order from August 4, 2003 is set aside, including the child support provisions, arrears provisions, and the judgments for child support arrears, medical arrears and travel expenses.
>
> 2. Child support shall be re-calculated and shall be retroactive to the date the father obtained custody of the children. The calculation shall be based on the incomes of the parties and the statutory guidelines in effect during 2004.
>
> 3. The recalculation will not include travel or medical expenses since the August 4, 2003 order does not clearly explain how those expenses were calculated for judgment purposes. Charles Ferree may petition the court for said travel and medical expenses that were included in the August 4, 2003 judgment if he chooses.

[¶14] The Department timely filed a notice of appeal. Father did not participate in the 2012 proceedings or in this appeal. Mother did not participate in the appeal to this Court.

## STANDARD OF REVIEW

[¶15] A district court's decision to modify a divorce decree is reviewed for an abuse of discretion. *Rocha v. Rocha*, 925 P.2d 231, 233 (Wyo. 1996). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it

means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Hanson v. Belveal*, 2012 WY 98, ¶ 4, 280 P.3d 1186, 1192 (Wyo. 2012) (quoting *Selvey v. Selvey*, 2004 WY 166, ¶ 15, 102 P.3d 210, 214 (Wyo. 2004)). An abuse of discretion occurs when a court's decision exceeds the bounds of reason or constitutes an error of law. *Rocha*, 925 P.2d at 233 (citing *Cranston v. Cranston*, 879 P.2d 345, 348 (Wyo. 1994)).

[¶16]  Because a court has jurisdiction to modify a divorce decree only as provided by statute, this appeal also presents jurisdictional issues, which are questions of law that this Court reviews *de novo*. *Hall v. Park County*, 2010 WY 124, ¶ 3, 238 P.3d 580, 581 (Wyo. 2010); *Thomas v. Thomas*, 983 P.2d 717, 719 (Wyo. 1999).

## DISCUSSION

[¶17]  In our view, the first question that must be addressed in this appeal is whether the district court had statutory authority to enter its order vacating the 2003 child support order and to enter a new order retroactive to 1999. We must conclude that the court did not have such authority.

[¶18]  This Court has, on a number of occasions, addressed a district court's authority to modify a divorce decree and the statutory limitations on that authority. We have held:

> Generally, courts have "only that authority to act which is conferred by the subject statute." *Bush v. State*, 2003 WY 156, ¶ 9, 79 P.3d 1178, 1183 (Wyo. 2003) (quoting *Merkison v. State*, 996 P.2d 1138, 1141 (Wyo. 2000)). It is well settled that divorce is purely a statutory process, with courts having no authority in such proceedings other than that provided by statute. *Urbach v. Urbach*, 52 Wyo. 207, 73 P.2d 953, 956 (1937); 24 Am.Jur.2d *Divorce and Separation* § 7 (2008). This limitation extends to the court's power to modify a divorce decree. *Aragon v. Aragon*, 2005 WY 5, ¶ 10, 104 P.3d 756, 759-60 (Wyo. 2005); *Smith v. Smith*, 895 P.2d 37, 41 (Wyo. 1995); CSP v. DDC, 842 P.2d 528, 531 (Wyo. 1992); 24 Am.Jur.2d *Divorce and Separation* § 369 (2008).

*Weiss v. Weiss*, 2009 WY 124, ¶ 13, 217 P.3d 408, 411-12 (Wyo. 2009); *see also Hanson*, ¶ 17, 280 P.3d at 1192-93.

[¶19]  The statute governing modification of a child support order provides, in relevant part:

> (a)  Any party, or the department of family services in

the case of child support orders being enforced by the department, may petition for a review and adjustment of any child support order that was entered more than six (6) months prior to the petition or which has not been adjusted within six (6) months from the date of filing of the petition for review and adjustment. The petition shall allege that, in applying the presumptive child support established by this article, the support amount will change by twenty percent (20%) or more per month from the amount of the existing order. The court shall require the parents to complete a verified financial statement on forms approved by the Wyoming supreme court, and shall apply the presumptive child support set out in this article in conducting the review and adjustment. If, upon applying the presumptive child support to the circumstances of the parents or child at the time of the review, the court finds that the support amount would change by twenty percent (20%) or more per month from the amount of the existing order, the court shall consider there to be a change of circumstances sufficient to justify the modification of the support order. The provisions of this section do not preclude a party or assignee from bringing an action for modification of a support order, based upon a substantial change of circumstances, at any time. Every three (3) years, upon the request of either parent or, if there is a current assignment of support rights in effect, upon the request of the department, the court, with respect to a support order being enforced under this article and taking into account the best interests of the child involved, shall review and, if appropriate, adjust the order in accordance with the guidelines established pursuant to this article. Any adjustment under the three (3) year cycle shall be made without a requirement for a showing of a change in circumstances. …

. . . .

(c) In addition to the petition authorized under subsection (a) of this section, the court on its own motion, or the department without petitioning the court, may increase monthly child support payments to include amounts for arrearages or may decrease the monthly child support payment in cases of emergencies or if the arrearages are paid. Any action by the department to increase monthly child support payments under this subsection shall allow the obligor a reasonable opportunity to contest the action in

7

accordance with the Wyoming Administrative Procedure Act and rules and regulations adopted by the department.

(d) An order for child support is not subject to retroactive modification except:

(i) Upon agreement of the parties; or

(ii) The order may be modified with respect to any period during which a petition for modification is pending, but only from the date notice of that petition was served upon the obligee as provided by the Wyoming Rules of Civil Procedure, if the obligor or the department is the petitioner, or to the obligor, if the obligee or the department is the petitioner.

Wyo. Stat. Ann. § 20-2-311 (LexisNexis 2011).

[¶20] The district court was not presented with any of the above-quoted circumstances that would statutorily authorize it to modify the 2003 child support order. None of the parties, Mother, Father, or the Department, moved for a modification of the child support order, and the circumstances were not as described in § 20-2-311(c), such that the court could act on its own motion to modify. *See also Connors v. Connors*, 769 P.2d 336, 348-49 (Wyo. 1989) (recognizing petition to modify child support as a statutory prerequisite to court's jurisdiction to act). Similarly, the court was not statutorily authorized to make its modifications retroactive. No petition to modify was pending, and the record contains no agreement of the parties to a retroactive modification. *See also Thomas*, 983 P.2d at 720 (holding that by statute child support order may not be modified retroactively beyond the date of petition to modify unless parties agree to modification).

[¶21] Because the district court did not have before it a petition to modify the August 2003 child support order, or a statutory circumstance authorizing the court to act on its own motion, the court was without jurisdiction to modify the child support order. Moreover, our holding is not affected by the fact that the court was attempting to give effect to the 2004 proceedings.

[¶22] The record is of course entirely unclear as to what occurred during the March 2004 hearing. What is clear, however, is that Mother did not appeal the August 2003 child support order, she did not file a W.R.C.P. 60 motion seeking relief from the child support order, and she did not file a petition to modify the child support order. Whatever may have occurred during the unreported March 2004 hearing, the court had before it only Father's contempt and visitation motions and Mother's custody motion. We thus conclude that to the extent the court in 2004 intended to order that the 2003 child support order be modified or vacated and for such modification to be applied retroactively, the

court was without jurisdiction to enter such an order and the order was void. *See Weiss*, ¶ 14, 217 P.3d at 412 (holding district court without jurisdiction to modify order where no petition to modify had been filed, dismissing appeal, and remanding for entry of an order vacating modification order).

[¶23] This Court has recognized that the limitations on a court's jurisdiction to modify a divorce decree serve important policy goals in the finality and predictability of judgments. *See Hanson*, ¶ 18, 280 P.3d at 1193; *Smith v. Smith*, 895 P.2d 37 at 41 (Wyo. 1995). We have also observed the policy served by not allowing retroactive modifications of child support orders:

> Furthermore, allowing retrospective modifications of divorce decrees may encourage default. A party might decide to stop payment and allow arrearages to accrue to a substantial amount, with the hope and anticipation that the court will cancel the accrued payments owed to the receiving party. We prefer a rule which encourages a party to seek modification of a divorce decree at the moment his financial situation changes. In the present case, appellant chose to simply stop making the required payments. We will not sanction this type of self-help by allowing retrospective modification of the decree.

*Parry v. Parry*, 766 P.2d 1168, 1170 (Wyo. 1989).

[¶24] While we recognize that the district court was attempting to craft an order to correct an incomplete record, we conclude that the court exceeded its statutory authority. Mother has taken no steps to legally modify the 2003 child support order, and the order therefore stands and is subject to enforcement.

## CONCLUSION

[¶25] The district court was without jurisdiction to modify the August 2003 child support order where no petition to modify had been filed. We therefore dismiss the appeal and remand to the district court for entry of an order vacating the Order Setting Aside August 4, 2003 Judgment and Child Support Obligation filed on June 29, 2012.

[¶26] The procedural history of this case does not reflect well on the judicial system and there are multiple reasons why. However, one fundamental problem is the lack of a record. The district court and the parties expended time, effort and resources in the 2004 hearing and, apparently, a decision was made. No court reporter recorded the proceedings or the decision. Whether that was because of the historically outdated $45.00 appearance fee required by statute for the reporter, who is a State employee, to

9

appear or the widespread practice of attorneys and judges to proceed without a reporter, we do not know. The reporter also was not even utilized by the court to memorialize its order. The attorneys failed to follow the court's directive to prepare an order consistent with the oral ruling and the parties failed to file the financial information the court requested, although a letter to the court by the attorney for Father suggested the financial affidavits had been filed, but placed in another confidential file. Mother failed to pay any child support and now has a substantial financial obligation. And, apparently, no one followed up to assure the court's orders were followed. Worse yet, this process drug out for over twelve years. Whether that failure was the result of no system of keeping track of deadlines or simple inattention, we do not know. Ultimately, public resources had to be expended by the child support enforcement authorities to attempt to recoup child support that should have been paid, but the required amount is uncertain. The first judge retired and the incoming district judge attempted to make the best of a bad situation, but did not have the requisite authority to do so. Finally, the cost and delay of an appeal to this Court resulted, and we are left with no choice but to remand the matter for the parties to start over. Surely our judicial system, and all of the actors within that system, could do better. While a situation as bleak as this one is the exception, similar failures appear in far too many cases. The Court believes that it is time for the bench and bar to take a hard look at our system and collaborate on procedures that will assure that judges, lawyers, and parties consistently perform our respective responsibilities so that situations such as those existing in the cases cannot occur.